IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DANIEL E. BUDORICK,** <br><br> Appellant, <br><br> v. <br><br> **HEATHER BUDORICK, MARLIYN MANERI, VINCENT MANERI and HOLLISTER INCORPORATED,** <br><br> Appellees. | **Case No. 19 C 3957** <br><br> **Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

This is an appeal of three Orders the Bankruptcy Court issued in the course of Daniel Burdock's Chapter 13 bankruptcy proceedings. For the reasons stated herein, the judgment of the Bankruptcy Court is affirmed.

### I. FACTUAL BACKGROUND

Daniel Budorick ("Daniel") appeals three Orders issued in his bankruptcy proceedings, with an Illinois divorce court decree regarding the disposition of non-transferrable stock at the heart of Daniel's appeal. (*See* Judgment of Dissolution of Marriage ("Dissolution J."), Ex. 1 to Mot. to Stay, Dkt. No. 4.) Heather Budorick ("Heather") filed for divorce from Daniel in Cook County in March 2014. (Dissolution J. at 2.) Heather works for Hollister Incorporated ("Hollister"). (*Id.* at 3.) Heather owns common stock

in Hollister's parent company, John Dickinson Schneider, Inc. ("JDS") (*Id.* at 8.) Heather can purchase JDS stock as a benefit of her employment. (*See* Daniel's Resp. to Heather's Obj. to Daniel's Exemption Claim at 26, Ex. 6 to Suppl. to Bankruptcy Appeal, Dkt. No. 6.) JDS's articles of incorporation set restrictions on who can own JDS common stock and whether and when that stock can be transferred: absent JDS's express consent, the shares cannot be transferred to any other person or entity other than JDS under any circumstances. (*Id.*) JDS repurchases its stock from the employee once the employee leaves Hollister. (*Id.*)

In its judgment dissolving Heather and Daniel's marriage, issued on November 28, 2018, the divorce court found that 2/7 of Heather's JDS stock was traceable to funds from her parents' bank accounts; because those shares were purchased with gift funds, they were not marital property. (Dissolution J. at 8.) The court held that the other 5/7 of JDS stock, valued at $105,268, was marital property to be split between Heather and Daniel. (*Id.*) The Dissolution Judgment provides:

> JDS stock – The Court finds that HEATHER traced the funds from her parents to separate back accounts on which DANIEL was not named, and checks were written by HEATHER from those accounts to the company to purchase the JDS stock. HEATHER traced by clear and convincing evidence the use of these gifted funds to purchase the stock in 2013 and 2014. . .HEATHER's JDS stock is therefore 2/7 non-marital property and 5/7 marital. The value provided by the company was as of May 18, 2018 indicating that

>  the stock was worth $147,375 as of December 31, 2017, the latest valuation date. Accordingly, 2/7 of that amount ($42,107) shall be assigned to HEATHER as her non-marital property and 5/7 ($105,268) shall be deemed marital property to be divided equally between HEATHER and DANIEL.

(*Id.* (internal citations omitted).) The Dissolution Judgment also awarded Daniel half of Heather's 401(k) account and half of the value of Heather's "Hollishares" account. (Dissolution J. at 14–15.) Hollishares is a "non-contributory, tax qualified defined contribution profit sharing plan designed to provide retirement benefits to Hollister's non-union employees in the United States." *See DeFazio v. Hollister, Inc.*, 854 F.Supp.2d 770, 776 (E.D. Cal. 2012).

On January 7, 2018—after Heather filed for divorce but before the state court issued the Dissolution Judgment—Daniel filed a petition for Chapter 13 bankruptcy in the Northern District of Illinois. (*See In re Daniel E. Budorick*, No. 18 B 426, Dkt. No. 1.) In Bankruptcy Court, Daniel argued that the Dissolution Judgment requires that Heather transfer to him half of the marital JDS shares, and prohibits Heather from compensating Daniel by giving him the cash value of his portion of the shares. Daniel also claimed his JDS shares were an exemption from the bankruptcy estate because they are a retirement plan under 735 ILCS 5/12-1006. Daniel issued subpoenas to Hollister, demanding a broad range of

information, including reports to shareholders and year-end reports that Hollister claimed were confidential and unrelated to the bankruptcy litigation.

The Bankruptcy Court subsequently ruled that: (1) Daniel received a money judgment from the state court rather than the JDS shares; (2) regardless, the JDS stocks were not part of a qualified retirement plan and thus not exempt from the bankruptcy estate; and (3) the subpoenas to Hollister were irrelevant given the court's other rulings and must be quashed. (*See* Order on Mot. to Vacate, Dkt. No. 1-5; Order on Obj. to Debtor's Claim of Exemption Dkt. No. 1-6; Order on Mot. to Quash, Dkt. No. 1-4 (collectively, the "Orders").) Daniel now appeals the Orders.

## II. DISCUSSION

On appeal, a bankruptcy court's legal conclusions are reviewed *de novo*. *In re Airadigm Communications, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010).

Daniel raises the following arguments on appeal: (1) the Bankruptcy Court violated the *Rooker-Feldman* doctrine and erred when it held that Daniel had a money judgment rather than a right to have JDS shares transferred to him; (2) the Bankruptcy Court erred in granting Hollister's Motion to Quash Daniel's subpoenas; (3) the Bankruptcy Court erred in granting Heather's objection to Daniel's Claim of Exemption and ruling that the JDS shares were

- 4 -

not a qualified retirement plan and therefore an asset exempt from the bankruptcy estate; and (4) the Bankruptcy Court erred in issuing the Orders because the state court order was stayed and unenforceable under 735 ILCS 5/2-1203.

### A. *Rooker-Feldman* Doctrine

Daniel contends that the Bankruptcy Court violated the *Rooker-Feldman* doctrine in holding that the Dissolution Judgment was a money judgment because that finding contradicted the state court judgment. The *Rooker-Feldman* doctrine is a subject matter jurisdictional bar on federal court claims that seek to set aside a state court judgment in any forum other than the United States Supreme Court. *See e.g., Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Federal court claims "that directly seek to set aside a state court judgment are *de facto* appeals that are barred without further analysis." *Id.* A claim is also barred if it is "inextricably intertwined with a state court judgment." *Id.* (citing *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016)). The ultimate question is whether the district court is "essentially being called upon to review the state court decision." *Id.* The determination of whether a federal claim is inextricably intertwined with a state court judgment "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal

claim alleges an independent prior injury that the state court failed to remedy." *Id.* If a federal claim is inextricably intertwined with a state court judgment and indirectly seeks to set that state court judgment aside, the federal court must determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Id.* If a plaintiff had a reasonable opportunity to raise the claims in state court and failed, the federal claim is barred. *Id.* at 904. The Supreme Court held that the *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

The *Exxon* holding limited the *Rooker-Feldman* doctrine to cases "brought by" state court losers. Thus, the first problem with Daniel's argument is that Heather and Hollister did not "bring" his bankruptcy case. Daniel himself instituted the bankruptcy proceedings, and Heather and Hollister then became parties to a proceeding for which the Bankruptcy Court already had subject matter jurisdiction. *See In re Littman*, 551 B.R. 355 (N.D. Ill. 2015) (finding *Rooker-Feldman* inapplicable when person

bringing motion was defendant in adversary proceeding over which bankruptcy court already had jurisdiction).

Moreover, Heather and Hollister were not "losers" in the state court judgment, nor did the Bankruptcy Court reject or overturn any aspect of that judgment. Nothing about the Bankruptcy Court's judgment set aside the Dissolution Judgment, redressed an injury to Heather or Hollister caused by the Dissolution Judgment, or otherwise acted as an appellate court in review of the Dissolution Judgment. Daniel argues that nothing in the Dissolution Judgment explicitly gives Heather the option of paying cash instead of transferring the shares. While this may be literally true, there is also no explicit language in the judgment ordering Heather to transfer one-half of the marital portion of her JDS shares. Absent such explicit language, the Bankruptcy Court reasonably interpreted the Dissolution Judgment as a money judgment. Additionally, the Bankruptcy Court's interpretation adheres to Illinois state law, which provides that it is an abuse of discretion for a court to fail to allow a distribution of marital property in accordance with an operating agreement "where compliance is easily possible." *See Marriage of Schlichting*, 2014 IL App (2d) 140158. Thus, Daniel's *Rooker-Feldman* argument fails because the doctrine is not applicable.

### *1. Error in Determining Money Judgment*

Relatedly, Daniel argues strenuously that even if the Bankruptcy Court did not violate *Rooker-Feldman* doctrine, it erred determining that the Dissolution Judgment was a money judgment. Daniel asserts that the Dissolution Judgment unequivocally dictates the transfer of JDS shares to him, but there is simply no reasonable reading of the Dissolution Judgment's text that supports that result. In addition to the text of the Dissolution Judgment, at a hearing, the divorce court judge stated that "pursuant to my judgment, based on the testimony and the trial proceedings, you were awarded that portion of that value of the stock." (Appellant's Br. at 7, Dkt. No. 10.) Accordingly, in interpreting the Dissolution Judgment, the Bankruptcy Court found that "the judgment order followed what the state court judge may have said in court [and so] the judgment order controls." (Order on Obj. to Debtor's Claim of Exemption at 4.) The divorce court judge's statement that Daniel had been awarded "that portion of that value" clearly denotes a money judgment. The Bankruptcy Court did not err in determining that the Dissolution Judgment awarded Daniel a money judgment.

### **B. Claim of Exemption**

Daniel also appeals the Bankruptcy Court's determination that the JDS stock was not an asset exempt from the bankruptcy estate.

Daniel wants his alleged interest in JDS stock classified as a tax-qualified retirement plan pursuant to 735 ILCS 5/12-1006.

A bankruptcy filing creates an estate comprising the debtor's property, but the U.S. Bankruptcy Code allows the debtor to claim exemptions, "enabling him to retain those assets post-bankruptcy." *Law v. Siegel*, 571 U.S. 415, 417 (2014) (citing 11 U.S.C. §§ 522(b)(1), 541(a)(1), 704(a)(1)). "A debtor's entitlement to a bankruptcy exemption is a question of law." *In re Hernandez*, 918 F.3d 563, 566 (7th Cir. 2019) (citing *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993)).

Although bankruptcy is a federal proceeding, the kinds of exemptions Daniel can claim from his bankruptcy estate are determined in part by Illinois law. Federal bankruptcy law provides two categories of properties that can be exempted from the bankruptcy estate, one of which includes exemptions created by state law. *In re Hernandez*, 918 F.3d at 566. By default, a debtor can choose the category from which he wishes to claim exemptions. *Id.* States can override the default rule by restricting debtors to one category, and Illinois has done that. *Id.* at 567. *See* 735 ILCS 5/12-1201. Thus, debtors in bankruptcy court in Illinois can claim only certain exemptions, including those allowed by Illinois law.

Illinois law allows certain retirement plans to be exempted from the bankruptcy estate. *See* 735 ILCS 5/12-1006. The relevant statutory portion holds:

> (a) A debtor's interest in or right. . .to the assets held in or to receive. . .payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended. . .

735 ILCS 5/12-1006.

To qualify for this exemption, the retirement plan must be "held in a trust or equivalent arrangement and must come within the Internal Revenue Code provisions for tax-qualified retirement plans." *In re West*, 507 B.R. 252 (N.D. Ill. 2014) (citing *In re Schoonover*, 331 F.3d 575, 577 (7th Cir. 2003)). Heather purchased her stock from a trust but holds it personally. This alone is enough to find that the shares are not exempt.

For the sake of completeness, the Court will address one other argument Daniel makes on this point. Objectors to an exemption carry the burden of demonstrating that the exemptions are not properly claimed. Fed. R. Bankr. Proc. 4003(c). Daniel argues Heather and Hollister have not met that burden; the Court is satisfied that they have. None of the documents that Heather and Hollister provided, including the share purchase agreement, indicate that

the JDS shares are a retirement plan. JDS has other programs that are clearly intended to be retirement plans, including Hollishare, and this strongly suggests that the JDS shares are intended to be exactly what Hollister claims they are—an employee incentive program. Daniel has not pointed to any affirmative evidence in the record that the JDS shares are intended to qualify as a retirement program. Instead, Daniel merely asserts the nature of the shares— that JDS repurchases them when the employee leaves Hollister—means that JDS shares are a retirement program. This argument is not persuasive.

For these reasons, the Bankruptcy Court did not err in ruling that the JDS stock is not exempt from the bankruptcy estate, and the ruling is affirmed.

### C.  Motion to Quash

Daniel argues that the Bankruptcy Court erred in ruling that his subpoenas to Hollister were not relevant and that Hollister did not meet its burden in showing that the subpoenas were unduly burdensome. As the party seeking to quash, Hollister had the burden of demonstrating that the requests are unduly burdensome. *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir. 2002). Hollister responds, as it did in Bankruptcy Court, that much of the information Daniel subpoenaed is proprietary—including year-end reports to shareholders, internal records and projections, and

confidential financial information—and unrelated to any issues in this dispute.

The Court need not scrutinize Daniel's subpoenas and decide whether Hollister met its burden because Daniel concedes that the records he sought concerned the tax treatment of JDS stock. Daniel apparently wanted these records to show that the JDS shares were part of a qualified retirement plan exempt from creditors. For these records to be relevant at all, Daniel would need to have a right to these shares. This Court has already held that the Bankruptcy Court was correct in ruling that he did not.

Therefore, whether the Bankruptcy Court erred in quashing these subpoenas is moot, and Daniel's appeal on this matter is denied accordingly.

### D. Motion to Stay

If the Court does not conclude that the Bankruptcy Court erred in issuing the Orders, Daniel asks in the alternative that the Court vacate the Orders and stay the bankruptcy proceedings pending the outcome of his state court appeal. Daniel contends that the Court should vacate because the Bankruptcy Court never had authority to issue the Orders. Daniel claims that the Orders enforced a state court judgment in violation of 735 ILCS 5/2-1203, a state law that provides:

> (a) in all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within

>any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.
>
>(b) Except as provided in subsection (a) of Section 413 of the Illinois Marriage and Dissolution of Marriage Act, *a motion filed in apt time stays enforcement of the judgment. . .* (emphasis added)

735 ILCS 5/2-1203 (emphasis added.)

Daniel claims that his Motion to Reconsider the Dissolution Judgment was pending when the Bankruptcy Court issued its Orders.

The problem with this argument is that, despite Daniel's representation, there seems to have been no Motion to Reconsider pending at the time the Bankruptcy Court issued the Orders. The Bankruptcy Court issued the Orders on April 22, May 30, and May 31, 2019. The state court decided Daniel's Motion to Reconsider on April 10, 2019. The state court docket shows no successive motion filed before Daniel filed his appeal 29 days later. In asking this Court to vacate the Bankruptcy Court's order because of a motion to reconsider that had already been decided, Daniel makes not just a frivolous argument but a dishonest one.

This makes it necessary for the Court to discuss briefly Daniel's history of misbehavior in the proceedings surrounding his divorce. Daniel's conduct during the pendency of the divorce proceedings has cost him nearly $100,000 in sanctions and repayment

of attorneys' fees from both the state court and from the Seventh Circuit. Daniel filed a federal suit against Heather's parents, alleging that they diverted funds from the marital estate. He also tried to remove the divorce case and consolidate it with the federal proceedings. The district judge assigned to the removal proceedings held that the relief Daniel sought would intrude on the state court's resolution of disputes over what assets belong in the marital estate and dismissed his complaint. *See Budorick v. Maneri*, 2016 WL 1070373, at *1 (N.D. Ill. March 22, 2016) (dismissing complaint). Daniel appealed, and the Seventh Circuit found his appeal "frivolous, unjustified by any purpose other than to stall the divorce proceedings." *Budorick v. Maneri*, 697 Fed. Appx. 876, 879 (7th Cir. 2017) (unreported). The state divorce court also sanctioned Daniel and ordered him to pay a portion of Heather's attorneys' fees for undue delay. (Dissolution J. at 12-13) ("There is little question that DANIEL has done everything in his power to delay and stall this case from being tried. . . including filing a Chapter 13 bankruptcy. . ."). The state court described Daniel's actions as "egregious" and wrote that his behavior "exponentially increased the cost of this litigation to HEATHER who had to pay her attorneys while DANIEL [who is an attorney] represented himself and had no cost associated with self-representation." (Dissolution J. at 13.)

Further, the Bankruptcy Court on multiple occasions suggested that Daniel seek clarification from the state court about whether the Dissolution Judgment was a money judgment. Daniel filed a Motion to Reconsider but did not ask the state court for clarification on the precise question he has now raised in an attempt to stall proceedings in two federal courts. The Motion to Reconsider therefore raised no issues relevant to the Orders now on appeal. Daniel has now appealed the entire Dissolution Judgment. Daniel failed to request clarification on an issue before the Bankruptcy Court when he had the opportunity to do so. He cannot now argue that the Court should stay proceedings pending his appeal.

The parties have given no indication that the state court stayed the effects of its judgment pending Daniel's appeal. Therefore, unless and until Daniel succeeds on his state court appeal, the divorce judgment is valid and binding. The "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *See McClellan v. Carland*, 217 U.S. 268, 282 (1910). The Court is particularly disinclined to stay these proceedings given Daniel's history of being sanctioned for filing frivolous motions and attempting to delay litigation and because he failed to request clarification from the state court while he had the opportunity.

Daniel's request that the Court stay further bankruptcy proceedings while the parties litigate their appeal in state court must therefore be denied.

### III. CONCLUSION

For the reasons stated herein, the Court finds that the Bankruptcy Court did not err when it issued the Orders. Accordingly, the judgment of the Bankruptcy Court as to its Order on Motion to Quash, Order on Motion to Vacate, and Order on Objection to Debtor's Claim of Exemption is affirmed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 10/22/2019